## Commonwealth v. Brown

*Howard R. Berninger,* for Commonwealth.

*Hervey B. Smith,* for petitioners.

KREISHER, P. J., August 4, 1958. — Mrs. Caroline Brown, a widow 76 years of age, lives with a grandson, aged 20, in the Borough of Berwick, who is presently paying her $20 per month, on account of his room and board. She also receives a Social Security payment by reason of her husband's death in the amount of $40.40 per month.

Roland Brown, the proprietor of Brown Motor Company in Berwick, one of her more prosperous sons, endeavored to have his brothers and sisters work out a budget for his mother's support in the amount of $198 per month, with the balance over and above the aforementioned contributions to be contributed by the

brothers and sisters in accordance with an amicable settlement.

After protracted negotiations with no satisfactory results, he instituted the above-captioned action pursuant to and in accordance with the Support Law of June 24, 1937, P. L. 2045, sec. 3, as last amended by the Act of October 7, 1955, P. L. 660, 62 PS §1973, which provides, inter alia, as follows:

"(a) The husband, wife, child, (except as hereinafter provided), father and mother of every indigent person, whether a public charge or not, shall, if of sufficient financial ability, care for and maintain, or financially assist, such indigent person at such rate as the court of the county, where such indigent person resides shall order or direct. No child shall be liable for the support of any parent who abandoned the child and persisted in the abandonment for a period of ten years during the child's minority.

"(b) The courts shall have power to hear, determine and make orders and decrees in such cases upon the petition of such indigent person, or of any other person or any public body or public agency having any interest in the care, maintenance or assistance of such indigent person . . ."

Pursuant to the above-mentioned petition being filed, a hearing was held at which time four sons and five daughters appeared and testified.

From the testimony it is apparent that there is considerable difference of opinion among the sons and daughters with respect to the mother's needs, which controversy arises because of the grandson living with the grandmother.

It is the contention of one faction that if the grandson was removed from the home, no need would exist, since the grandmother uses most of her money on him instead of herself.

If this woman lived by herself in Berwick with no legally responsible relatives and was forced to turn to the Department of Public Assistance for help, her maximum monthly budget, which the department recognizes as meager and insufficient, would be as follows:

"Food: Twenty Six Dollars and Twenty ($26.20) Cents; Clothing, Five ($5.00) Dollars; Shelter, Seventeen ($17.00) Dollars; Fuel, Five Dollars and Sixty ($5.60) Cents; Cooking Fuel, One Dollar and Eighty ($1.80) Cents; Electric Light, One Dollar and Forty ($1.40) Cents; Refrigeration, Two ($2.00) Dollars; Incidentals, Three ($3.00) Dollars, making a total of Sixty-Two ($62.00) Dollars."

The department, in addition to the above, would furnish medical attention, drugs and nursing as needed, which would be paid directly to the doctor, nurse or druggist.

Petitioner testified that the budget he proposed includes the following: rent, $45; food, $86.67; bottled gas, $3.50; phone, $3.30; clothing, $10; household contents, repairs, pots and pans, bedding and so forth, $10; miscellaneous which would include doctor bills, medicine, church donations, cleaning, garbage disposal and newspaper, $40; making a total of $198.47. Of this amount he contends the grandson should pay $20 per month for room and board; Social Security, $40.40. and his brothers and sisters the balance of $138.07.

The first inquiry in this proceeding as we view the controversy is the determination of the mother's needs.

The Department of Public Assistance admits that their budget of $62 per month is meager and insufficient, and since it was testified that the mother is presently paying $45 per month rent, we believe we would be justified in increasing the budget in the difference between the $17 allowed for shelter by the Department of Public Assistance and the $45 being paid by the

mother, or a total of $28, which, added to the department's budget, would make a total of $90. In addition to this amount, we believe since the grandson is eating with the grandmother, that the Department of Public Assistance allowance for food should be increased to approximately $50 per month, which would add another $25 approximately to the budget making a total of $115.

The testimony indicates that this grandson has lived in the home of the grandmother since he was a boy of tender years and that the grandmother and grandfather, when he was living, looked upon this grandson as a son. For this reason we do not think we would be justified in directing, as some of the children request, that the grandson be required to remove himself from the home.

The father of the grandson is a son of the grandmother, employed in New Jersey and over the past years has made little or no contributions towards the support of his son or his mother, and this is an additional reason for not requiring his removal from the grandmother's home.

We are inclined to agree with the sons and daughters that the budget proposed by petitioner is excessive, and that sons and daughters when contributing to the support of their mother should not be required to contribute towards the support of a 20-year-old grandson.

The above quoted act of assembly directs that the court after hearing shall determine whether or not the legally responsible relatives are of sufficient financial ability to contribute and must base any order made accordingly.

At the preliminary negotiations, four of the daughters had agreed to contribute the nominal sum of $5 per month, providing the case was not brought into court.

At the time of hearing they testified, since the court case was instituted, they chose to assert their legal rights of being relieved from support because they were married and their only occupation that of housewife with no independent income.

In the case of Commonwealth ex rel. Goldman v. Goldman, 180 Pa. Superior Ct. 337, it is distinctly held that a married daughter with no separate income is not of sufficient financial ability to assist in the support of a parent, the law being that a son-in-law is not liable for the support of a father or mother-in-law, and, therefore, we can eliminate these four daughters in this proceedings on the above principle.

The fifth daughter, Mrs. Joseph Torsello, is employed in Washington, D. C., as a secretary with an annual net income around $3,600 per year.

She testified that she has in the past been contributing $15 a month toward the support of her mother and is willing to continue the payments so long as she stays in Washington and remains at her present position. She is married and her husband is employed, but she has no knowledge of his income.

Now, taking up the financial ability of the sons, an examination of the testimony of Roland Brown shows that he is the proprietor of the Brown Motor Company in Berwick and that his net annual income for the past four years was $5,711. He testified that his total income last year was $4,188.

He further testified that he in the past had been contributing $20 per month for the support of his mother and that he is willing to continue the payments in this amount.

Herbert Brown is also in the garage business and self-employed. He is married and the father of four children, whom he is supporting. However, his wife is employed and she contributes also to the support of the family. Herbert Brown in the past had been pay-

ing $15 per month for the support of his mother. However, he now contends that he is unable to pay this amount and objects to the grandson being in the home, because he contends any amount he pays to his mother is immediately transferred to the grandson and, since he has four children of his own, he thinks he should use his money for the support of his own children.

The testimony does not definitely indicate his net income, but since he did contribute in the past and refused the last payment merely because of the grandson being in the house, we conclude that he is of sufficient financial abilty to make at least a nominal contribution.

Harold Brown lives in Bloomsburg and is employed as a loom fixer, and in the past agreed to pay $10 per month for the support of his mother. His take home pay runs about $55 per week, and he is supporting four people. He is purchasing his own home and is currently paying on a mortgage. However, at the time of hearing, he testified that he would be willing to now pay $15 per month.

Marvin Brown lives at Berwick R. D. and is employed by his brother at Brown Motors. His average take home pay is $56 per week. He is married and is supporting his wife with no other dependents. He has not been contributing to the support of his mother because of trouble in his home caused by his wife being called upon to contribute to the support of her father, and she contends since he will not help support her father, he should not help support his mother.

The above-quoted act of assembly and the above-mentioned principle of law in regard to the responsibility of a son-in-law clearly answers his wife's contention, and we trust our enforcement of the law will not cause any domestic difficulty. He testified he probably could contribute $10 or $15 per month, but he desires the court to decide the matter.

John Brown, the father of the grandson, is a mechanic regularly employed in New Jersey earning $320 per month. He is presently paying $115 a month on his home and $11 per week for a doctor bill. He states that he has no objection to contribute a reasonable amount to the support of his mother, but he desires the court to fix the amount.

We have reviewed the testimony of all the witnesses as transcribed and filed, and it is our considered opinion that four of the married daughters who are unemployed are not of sufficient financial ability to contribute to the support of their mother.

On the other hand, we do find that all of the sons and the one daughter who is employed in Washington, D. C., are of sufficient financial ability to make a monthly contribution for the support of their mother and taking into consideration their circumstances, we find that the budget of $198 per month cannot be met by these legally responsible relatives, but we do think that they are able to pay a sufficient amount in addition to what their mother receives from the grandson and Social Security to give the mother a reasonably sufficient amount to live a conservative but comfortable life, and, therefore, we make the following:

### Order of Court

And now, August 4, 1958, the rule heretofore issued upon Mrs. William Berger, Mrs. Harold Walters, Mrs. Herman Fink and Mrs. Arthur Varner is hereby discharged and the said rule is hereby made absolute against Marvin Brown, who we find to be of sufficient financial ability to contribute the sum of $15 per month for the support of his mother, the first payment to be made during the month of August 1958; against John Brown, who we find to be of sufficient financial ability to contribute the sum of $15 per month for the support of his mother, the first payment to be made

during the month of August 1958; against Herbert Brown, who we find to be of sufficient financial ability to contribute the sum of $15 per month for the support of his mother, the first payment to be made during the month of August 1958; against Harold Brown, who we find to be of sufficient financial ability to contribute the sum of $15 per month for the support of his mother, the first payment to be made during the month of August 1958; against Roland Brown, who we find to be of sufficient financial abiilty to contribute the sum of $20 per month for the support of his mother, the first payment to be made during the month of August 1958; and against Mrs. Joseph Torsello, who we find to be of sufficient financial ability to contribute the sum of $15 per month for the support of her mother, the first payment to be made during the month of August 1958.

It is further ordered and decreed that the costs of these proceedings be paid by the County of Columbia.